# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

DAFON CANTY,

   Plaintiff,

v.

CORIZON HEALTH, et al.,

   Defendants.

Civil Action No.:  SAG-23-482

## MEMORANDUM OPINION

     Self-represented Plaintiff Dafon Canty filed this civil rights complaint against Holly Hoover, CRNP; Adane Negussie, PA; Dr. Joe Barret; and Corizon Health, Inc. on February 21, 2023.[1]  Compl., ECF No. 1.  Defendants Hoover and Negussie filed a Motion to Dismiss or Alternatively for Summary Judgment on June 20, 2023.  ECF No. 19.  Canty opposed the Motion and Defendants replied.  ECF Nos. 21, 22.  A hearing is not necessary to resolve the pending motion.  *See* Local Rule 105.6 (D. Md. 2023).  For the following reasons, the Court will grant Defendants' Motion.

## Background

**A. Canty's Complaint**

     On April 15, 2015, another inmate assaulted Canty, fracturing his mandible.  ECF No. 1 at 3.  The injury required surgical repair, including plates and screws being placed inside Canty's mouth and jaw.  *Id.*  Canty's surgeon advised that he may experience general pain and discomfort as well as nerve pain.  *Id.*  On April 23, 2015, doctors prescribed Canty several medications: Tylenol, Ensure Plus drinks, muscle relaxers, mouthwash, and another unidentified medication.

---

[1] This case is and remains stayed as to Defendant Corizon Health, Inc. pursuant to ongoing bankruptcy proceedings. *See* ECF No. 4.  Following disposition of the claims against all other Defendants, the case as to Corizon will remain stayed but will be administratively closed.

*Id.* Weeks later, doctors discontinued those prescriptions, and instead prescribed Canty Tramadol and a 20 mg muscle relaxer. *Id.* Months later, the Tramadol was swapped with 300 mg Gabapentin. *Id.* Eventually, Canty's Gabapentin dose was increased to 400 mg and later 600 mg. *Id.* Canty was also taking two to three other medications to treat his pain. *Id.* at 4. He suffered from stiffness, popping, and nerve damage from left side of his jaw through his bottom lip. *Id.*

On October 1, 2017, Dr. Barret removed Canty from the Gabapentin because he purportedly had refused to see a provider, although Canty states he was never informed of this appointment. ECF No. 1 at 4. Dr. Barret prescribed him an anti-depressant that did not treat his pain. *Id.* He was also prescribed "Alivil, Therapeutic [sic] shampoo, and naproxen," which also did not effectively treat his pain. *Id.*

Canty submitted several sick calls between November 2017 and February 2018. ECF No. 1 at 4. For various reasons, his appointments were rescheduled or cancelled; he continued to file sick calls because he was not receiving adequate treatment. *Id.* at 5. Eventually, between 2017 and 2019, either CNRP Hoover or PA Negussie saw Canty every three to seven months. *Id.* Canty asserts that this change in providers resulted in neither of them taking any action to address his nerve pain, stiffness, and limited range of motion. *Id.*

Finally, in February 2021, Hoover prescribed Canty a psychiatric medication, Tegretol. ECF No. 1 at 5. He felt "drowsy, tired, and weird" on Tegretol; Corizon medical staff continued to switch his medication between Tegretol and Cymbalta, neither of which treated Canty's pain. *Id.* Staff refused to prescribe either Gabapentin or Tramadol to Canty again. *Id.*

Canty alleges that Defendants' failure to provide adequate medical care has caused him an inability to sleep, eat, or exercise. ECF No. 1 at 6. He asserts that he should be in chronic care but does not receive any chronic pain management. *Id.* As a result, he is losing weight because

2

he must forgo meals due to his jaw pain and is suffering from depression and anxiety. *Id.* Canty seeks declaratory, injunctive, and monetary relief. *Id.* at 7.

### B. Defendants' Response

Hoover attests that she prescribed an appropriate regimen to Canty. ECF No. 19-2 at ¶ 5. According to Hoover, Tylenol 3, which is Tylenol with codeine, and Tramadol are narcotics and thus are not used for long-term treatment of chronic pain. *Id.* She asserts that Tegretol is the medication of choice to treat trigeminal neuralgia (or facial nerve pain) like Canty suffered; Cymbalta and Lyrica are also available to treat such pain. *Id.* Hoover also notes that opioids and narcotics are contraindicated for bone pain, whereas Tylenol and ibuprofen are the medications of choice for such a diagnosis. *Id.* Finally, Hoover attests that Baclofen is appropriate to treat muscle spasms. *Id.*

The medical records provided show that on April 4, 2019, Canty saw an otolaryngologist ("ENT"), Dr. John F. Biedlingmaier, on referral from his dentist, Dr. Allen Graves. ECF No. 19-9 at 19. Dr. Biedlingmaier noted that Canty had a bilateral mandible fracture and plating in 2015. *Id.* Canty reported that his lip had been numb and he experienced pain when chewing and touching the screw on the left side. *Id.* He also experienced shooting pain if his jaw was touched or if it was hit by the wind. *Id.* After evaluation, Dr. Biedlingmaier recommended a CT scan of the mandible to "assess for non union which would require considerably mor[e] surgery." *Id.* at 27.

Hoover saw Canty on December 23, 2019, for a provider visit. ECF No. 19-8 at 34-35. She reviewed Dr. Biedlingmaier's recommendation and submitted a request for a CT scan of Canty's mandible, which was approved on December 30, 2019. *Id.* at 31-32, 34-35; ECF No. 19-9 at 7. The CT scan was completed on January 13, 2020, which revealed no hardware failure or migration nor any general instability. ECF No. 19-3 at 12.

Canty returned to see Hoover on February 7, 2020; after reviewing the CT scan results, Hoover submitted another consultation request for Canty to return to the ENT specialist because his symptoms were worsening. ECF 19-2 at ¶ 9; ECF No. 19-8 at 21, 24. The request was approved, however, Canty's appointments were repeatedly cancelled due to the emerging Covid-19 pandemic. ECF No. 19-9 at 10-11. Canty finally saw Dr. Mingyang Gray at Johns Hopkins Otolaryngology on September 24, 2020. ECF No 19-3 at 13-15. Dr. Gray planned to obtain Canty's CT scans from Hoover to assess the need to remove the hardware. *Id.* at 15.

On January 26, 2021, Hoover saw Canty for a sick call regarding his asthma. ECF No. 19-8 at 14-15. Canty reported that he was still suffering from pain in the left side of his jaw and stated he was awaiting surgery to have hardware removed. *Id.* at 14. Hoover prescribed him ibuprofen for pain; Canty was already prescribed Tylenol and Motrin at the time. *Id.* at 15. Hoover attests that there was no order or recommendation for surgery in his file. ECF No. 19-2 at ¶ 11.

Canty returned to Hoover for a follow up appointment on February 5, 2021. ECF No. 19-8 at 10-11. Because Canty reported that the ibuprofen was ineffective, Hoover prescribed him Tegretol 200 mg, two tabs twice daily, for the nerve pain. *Id.* Hoover also submitted a consultation request for Canty to return to the ENT specialist. *Id.* at 8-9; ECF No. 19-9 at 12-13. On February 10, 2021, Utilization Management ("UM") returned an alternative treatment plan ("ATP") after finding there was no medical necessity for Canty to return to the ENT. *Id.* at 12. UM recommended onsite review of CT results and consideration of C-reactive protein labs and treatment for TMJ (temporomandibular joint dysfunction) if supported by examination. *Id.* Hoover attests that Dr. Asresahegn Getachew directed her to accept the ATP and schedule a follow up appointment, but she had no further involvement in Canty's care. ECF No. 19-2 at ¶ 12.

On June 1, 2021, Canty saw RN Amethyst Marsh for complaints of facial pain. ECF No. 19-7 at 55-56; *see* ECF No. 19-3 at 29. She referred him to a provider to discuss pain management for TMJ as Canty reported that his medications were not providing any relief. *Id.*

Canty saw Dr. Aaiysa Ansari-Lawal on September 9, 2021, for a provider sick call for shoulder pain. ECF No. 19-7 at 44-46. Canty was still prescribed Tegretol at the time; Dr. Ansari-Lawal added Tylenol and muscle rub for his shoulder pain. *Id.* PA Adane Negussie saw Canty about his shoulder again on January 24, 2022; Negussie prescribed him Baclofen in addition to his Tegretol. *Id.* at 20-21. Negussie attests that Canty did not report any facial pain during this appointment. ECF No. 19-10 at ¶ 6.

On May 10, 2022, Canty had a telemedicine appointment with Dr. Getachew and LPN Lori Keister for chronic care. ECF No. 19-7 at 8-10. Canty reported chronic pain in both his shoulder and jaw; Dr. Getachew described it as neuropathic-type pain. *Id.* at 11-13. Dr. Getachew discontinued the Tegretol and prescribed Cymbalta instead. *Id.* at 13. He also approved a Baclofen prescription on May 18, 2022. *Id.* at 7.

Canty saw RN Ernest Massalla on June 17, 2022, and reported his facial pain was ongoing and he needed his medications reviewed. ECF No. 19-7 at 4-6; *see* ECF No. 19-4 at 4. Canty was currently prescribed Baclofen but stated it was not helping and requested Neurontin; Massalla referred him to a provider. ECF No. 19-7 at 4-6. Canty declined Tylenol and ibuprofen. *Id.*

RN Jessica Coffman saw Canty for a sick call on August 17, 2022. ECF No. 19-7 at 1-2; *see* ECF No. 19-4 at 13. Canty reported that that neither Tegretol nor Cymbalta had provided pain relief and that his left cheek was stiff down to his bottom lip. ECF No. 19-7 at 1-2. He stated that he had issues with pain since 2017 when his Gabapentin and Tramadol were discontinued. *Id.* Canty was continued on Tegretol. *Id.*

5

Dr. Getachew saw Canty for chronic care on August 29, 2022, where Canty again requested to be prescribed Neurontin or Tramadol. ECF No. 19-6 at 51-53. After examination, Dr. Getachew found the oral cavity normal with no masses or lesions. *Id.* He determined that Canty may have myofascial pain due to the fracture. *Id.* He prescribed Lyrica 100mg. *Id.* That prescription was renewed on November 25, 2022, and February 1, 2023. *Id.* at 24, 36.

Canty saw PA Negussie again for a sick call on February 20, 2023, to follow up on his high blood pressure. ECF No. 19-6 at 14-16. Negussie prescribed hydrochlorothiazide 25mg and discussed Canty's medication, diet, and exercise. *Id.* Negussie again attests that Canty did not report any facial pain during this appointment; he already had prescriptions for Tegretol and Lyrica at the time. ECF No. 19-10 at ¶ 7.

Dr. Joginder Mehta saw Canty on February 28, 2023, for a chronic care visit for his facial pain, among other things. ECF No. 19-6 at 10-13. Dr. Mehta continued both the Tegretol and Lyrica prescriptions. *Id.*

**Legal Standards**

### I.      Federal Rules of Civil Procedure 12(b)(6) and 56(a)

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir.

1998).  When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.  Because Defendants styled their motion as a motion to dismiss, or in the alternative, for summary judgment, Canty was on notice that the Court could treat the Motion as one for summary judgment and rule on that basis. As Defendants have submitted materials outside the pleadings, the Court will construe their Motion as one for summary judgment.

## II.     Rule 56(d)

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002) (discussing affidavit requirement of former Rule 56(f)).  "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"  *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports,* 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.,* 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham,* 437 F.

Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

The Court construes Canty's assertion in the declaration attached to his opposition that there are select medical records missing from those submitted by Defendants as asserting

9

additional discovery is necessary. ECF No. 21-2 at 1. However, Canty makes no statement as to what may be contained in these records or what genuine issue of material fact he may be able to prove with access to those records. As such, the Court will deny this request and proceed to the merits of Defendants' Motion.

### III. Eighth Amendment

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that

prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

After a serious medical need is established, a successful claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "Actual knowledge or awareness on the part of the alleged inflicter … becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

If the required subjective knowledge is established, a defendant may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable."). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*,

11

240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)) *see also Jackson*, 775 F.3d at 179 (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk). While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) (transgender inmate stated plausible claim in alleging defendant's refusal to evaluate her for gender reassignment surgery where current therapy failed to alleviate urge for serious self-harm).

## Discussion

Defendants assert that they are entitled to dismissal of the Complaint pursuant to Federal Rule 12(b)(6) or, in the alternative, to summary judgment pursuant to Rule 56 because Defendants were not deliberately indifferent to Canty's medical needs under the Eighth Amendment. Defendants do not dispute that Canty's chronic nerve and joint pain stemming from his jaw surgery constitutes an objectively serious medical need. ECF No. 19-1 at 12. However, they contend that the record shows neither Negussie nor Hoover were deliberately indifferent. *Id.*

### I.     Adane Negussie

Canty alleges he submitted several sick calls between 2017 and 2019, for which he saw Negussie or Hoover every three to seven months. The record shows Negussie saw Canty on two occasions, once in 2022 and once in 2023, related to medical issues other than his facial and jaw pain. However, nothing in the record demonstrates that Negussie was deliberately indifferent to Canty's facial pain. Although Canty purports to have had additional appointments with Negussie at which he complained about his facial pain, he provides no evidence to support this claim and

the medical records provided do not show that he raised the issue at either of the two documented visits. Moreover, to the extent he complains about instances that occurred before December 2019, his claims are time barred.[2]  *See* ECF No. 22 at 2, n.2.

Even if the Court assumes that Negussie did, in fact, conduct an active medication review as Canty asserts in his opposition (ECF No. 21 at 4), Canty fails to show deliberate indifference. Canty's allegation that Negussie was aware of Canty's facial pain due to his review of his active medications does not demonstrate that Negussie's failure to prescribe anything other than Baclofen was an intentional disregard for Canty's pain. Rather, this amounts only to a disagreement between Canty and Negussie regarding the course of treatment. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)). Canty's opinion that Negussie should have prescribed him Lyrica like Dr. Getachew later did (ECF No. 21-2 at 4)

---

[2] The statute of limitations is an affirmative defense, raised by Defendants, who also have the burden of establishing the defense. Fed. R. Civ. P. 8(c); *Goodman v. Praxair, Inc*., 494 F.3d 458, 464 (4th Cir. 2007). "Section 1983 provides a federal cause of action, but in several respects relevant here, federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: it is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In Maryland, the applicable statute of limitations is three years from the date of the occurrence. *See* Md. Code Ann., Cts & Jud. Proc. Code § 5-101.

Whether a cause of action has accrued under § 1983 is a federal question. *See Nassim v. Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). The date of accrual occurs "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id*. Under the prison mailbox rule, an action under § 1983 commences for the purpose of meeting the statute of limitations when the complaint is delivered to prison staff for mailing and is no longer under the plaintiff's dominion and control. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Lewis v. Richmond City Police Dept*., 947 F.2d 733 (4th Cir. 1991).

The three-year statute of limitations may be tolled for equitable reasons, but only in "those rare instances where, due to circumstances external to the party's own conduct, it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (citing *Harris v. Hutcherson*, 209 F.3d 325, 330 (4th Cir. 2000)). Equitable tolling is unavailable to a plaintiff who has not been diligent in protecting their rights; rather, the plaintiff must establish that they have been prevented from asserting those rights. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 555 (1974). Under Maryland law, the statute of limitations is strictly construed. "Absent legislative creation of an exception to the statute of limitations, we will not allow any 'implied and equitable exception to be engrafted upon it.'" *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 333 (1994) (quoting *Booth Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 623 (1985)).

Assuming that Canty gave the initial complaint to prison staff for mailing the same day he signed it, this case was initiated on December 10, 2022. ECF No. 1. While Defendants fail to take the prison mailbox rule into account in their calculation, they are correct that some of Canty's claims are time barred. However, the deadline is actually December 10, 2019, three years prior to when Canty signed the Complaint.

13

fails to present any exceptional circumstances. Negussie's actions did not pose a risk of serious or significant injury to Canty, and he is accordingly entitled to summary judgment.

## II. Holly Hoover

As a preliminary matter, any claims against Hoover which accrued prior to December 10, 2019, are time barred as discussed previously. As to Canty's timely claims against Hoover, she asserts that although she prescribed Tegretol on February 5, 2021, Canty did not address any complaints about Tegretol the last time she had an appointment with him. The medical records support her position – although she reviewed and accepted the ATP on February 25, 2021, at Dr. Getachew's direction, she did not have any further involvement in Canty's care. As such, she had no subjective knowledge that the Tegretol was ineffective in treating his nerve pain.

Furthermore, the record shows that Hoover took several actions to ensure that Canty received the proper medical care. She submitted a request for a CT scan following a recommendation from the ENT and submitted a request for Canty to return to the ENT for follow up after the scan. Canty appears to take issue with the fact that it was on his dentist's recommendation rather than Hoover's that he was referred to an ENT. ECF No. 21 at 3; ECF No. 21-2 at 3. However, even if true, it occurred outside the limitations period and regardless of who submitted the referral, Hoover did not delay or interfere with Canty seeing an ENT. Furthermore, any delays in returning to the ENT during the limitations period were not caused by Hoover, but rather by closures caused by the Covid-19 pandemic. Similarly, it was out of Hoover's control that UM rejected the request for Canty to return to an ENT a second time.

Beyond these allegations, Canty's main contention is that he was not provided an appropriate medication regimen to eliminate his facial nerve pain. Hoover attests that Tylenol 3 and Tramadol are narcotics not indicated for long-term pain treatment and that Gabapentin is not

14

usually prescribed because it is often abused in the prison system. She further notes that Tegretol is a labeled treatment for facial nerve pain, along with Cymbalta and Lyrica. She specifically noted that Lyrica works similarly to Gabapentin "without creating the accompanying 'high.'" ECF No. 19-2 at ¶ 5. Baclofen is a medication for muscle spasms and is appropriate when a patient is experiencing muscle spasms.

Canty complains that he was given Tylenol and ibuprofen, which are indicated for bone pain, instead of medications for nerve pain, and thus his nerve pain was not treated until February 5, 2021. ECF No. 21 at 5, 8. Canty is correct: the records show that on January 26, 2021, Hoover, during a sick call regarding his asthma, prescribed Canty ibuprofen upon his report that he was experiencing a painful screw in his left jaw area. As the parties agree that Canty was experiencing facial nerve pain, it is not clear why a more appropriate medication was not prescribed at this time. However, importantly, just ten days later, Hoover did prescribe Canty Tegretol when he reported no relief from the ibuprofen. While there was a slight delay in providing Canty with a more favorable treatment option, nothing in the record shows that this action was taken "for the very purpose of causing harm or with knowledge that harm [would] result." *Farmer*, 511 U.S. at 835.

Canty argues, however, that continuing with an ineffective course of treatment, in this case Tegretol, constitutes deliberate indifference. ECF No. 21 at 10. In his declaration, Canty asserts that because Dr. Getachew ultimately prescribed him Lyrica in August 2022, Hoover could have taken this course of treatment earlier but chose not to. ECF No. 21-2 at 4. He further attests that during appointments between 2018 and 2020, Hoover told him the pain he was experiencing was "in [his] mind" and that he was just depressed. *Id.* at 2. He further argues that other inmates were prescribed the medications he was requesting. ECF No. 21 at 11.

The Fourth Circuit has recognized that, in some instances, defendants' failure to change course from an ineffective treatment plan may state a claim for deliberate indifference. *Perry v. Meade*, 728 Fed. Appx. 180, 182 (4th Cir. 2018) (finding that plaintiff stated a claim where he alleged that he informed defendants that the treatment plan was ineffective, his pain and bleeding were worsening, and defendants failed to change course). While the Court acknowledges Canty's frustration in the time it took to find a pain medication that addressed the nerve pain to his satisfaction, the record does not support a finding that Hoover or the other medical providers who treated Canty persisted with an ineffective course of treatment. When Canty complained that the Tegretol was ineffective, Dr. Getachew prescribed Cymbalta and also added Baclofen; when Canty complained that his nerve pain persisted, Dr. Getachew changed his prescription to Lyrica in addition to the Tegretol. As such, the Court does not find that the medical providers, much less Hoover, persisted with an ineffective course of treatment. Rather, it appears that several different combinations of medications were prescribed to find the right pain relief for Canty. Thus, his complaints amount to no more than a disagreement over the proper medical care, which as discussed previously, does not demonstrate deliberate indifference. Even assuming that Hoover did, in fact, make dismissive comments to Canty regarding his pain, nothing in the record shows that she was responsible for his medication regimen beyond the initial Tegretol prescription. Thus, Hoover, with no subjective knowledge of the inefficacy of the Tegretol, is entitled to summary judgment.

### III. Dr. Joe Barret

Dr. Joe Barret was not served and has not answered the Complaint. However, Canty only alleges that on October 1, 2017, Dr. Barret discontinued his prescription for Gabapentin in favor of a different medication, which Canty states was ineffective. ECF No. 1 at 4. This claim, just

like those against Negussie and Hoover, alleges only a disagreement with a physician's treatment plan rather than deliberate indifference to a serious medical need. Additionally, the claim against Dr. Barret is time-barred. Therefore, Canty's claims against Dr. Barret must be dismissed pursuant to 28 U.S.C. § 1915.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss or Alternatively for Summary Judgment, construed as a motion for summary judgment, is granted. Judgment is granted in favor of Defendants Negussie and Hoover. The Complaint is DISMISSED as to Dr. Barret pursuant to 28 U.S.C. § 1915. A separate Order follows.

February 12, 2024  /s/
Date  Stephanie A. Gallagher
  United States District Judge